Gabrielli, J.
(dissenting). The issue which divides the court is whether the prosecution may properly be permitted to utilize for impeachment purposes the Grand Jury testimony of its own witness who, at trial, asserts he cannot recall the answers to questions that he answered before the Grand Jury and who further volunteers the untruthful information that his Grand Jury testimony was precisely similar. Resolution of the issue turns on the meaning of the phrase "tends to disprove” in CPL 60.35 which, insofar as is herein pertinent, reads:
"1. When, upon examination by the party who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove the position of such party, such party may introduce evidence that such witness has previously made either a written statement signed by him or an oral statement under oath contradictory to such testimony.”
The defendant was convicted of perjury, first degree (Penal Law, § 210.15), and sentenced to a one-year term of imprisonment. The Appellate Division affirmed, two Justices dissent *55 ing. A majority of the court now reverses the order affirming the conviction and holds that the testimony of a witness who states that he cannot recall events as to which he had lucidly testified under oath before a Grand Jury, is "neutral” and does "not contradict or disprove any testimony” (p 52). Since we cannot agree with such an unwarranted and restrictive reading of CPL 60.35, we dissent.
In April, 1970, a New York County Grand Jury was investigating the activities of Hugh Mulligan with respect to the making of illegal payments to officials of the steamfitters union. The Grand Jury was particularly interested in determining whether Mulligan actually worked for the Afgo Engineering Corporation or whether he was a bogus employee who gave his paychecks to defendant, a business agent for Local 638 of the Steamfitters Union, for the purpose of improperly influencing union affairs. In furtherance of the investigation, defendant was called before the Grand Jury and asked if, on February 7, 1969, he cashed a paycheck made out to Hugh Mulligan at Costello’s Bar in New York City. Defendant unequivocally denied having done so. Subsequently, the Grand Jury indicted defendant for perjury for failing to reveal, "as [he] well knew, [that] on February 7, 1969 in Costello’s Bar * * * [he] cashed a check made out to H. Mulligan by Afgo Engineering Corporation in the amount of $199.35”.
The falsity of defendant’s testimony was proved principally through the testimony of Lieutenant Edward J. Killeen, an undercover police officer, who was present in Costello’s Bar on February 7, 1969. He testified that from a position next to the defendant at the bar, he observed him, in the presence of Hugh Mulligan, hand the bartender, Francis X. Hanley, 65 cents and an Afgo Engineering Corporation paycheck in the sum of $199.35, payable to the order of Hugh Mulligan and indorsed by him; and that he saw the bartender stamp the back of the check, take $200 in bills out of the cash register and hand them to defendant, who put the money in his pocket.
The prosecution also called the bartender, Hanley, who was the only other participant in the check transaction and who was in the best position to corroborate Lt. Killeen’s testimony.[1] Prior to trial, Hanley had testified before the Grand *56 Jury and stated that he gave defendant an even $200 in cash in exchange for a check plus 65 cents. At trial, however, Hanley asserted that he could remember little of what had occurred because he had drunk too much. He testified that he could not recall cashing a check for defendant, and that he could not even recall whether defendant had been in Costello’s Bar on February 7, 1969. Then, in an answer unresponsive to the question put, Hanley volunteered the false information that he had given similar testimony before the Grand Jury, viz.: "That is my testimony before the Grand Jury, I don’t recall, same thing”. Subsequent thereto, he admitted that Mulligan and defendant were his friends and that he had met with defendant’s lawyer prior to the trial. However, when asked if he told the Grand Jury that defendant had cashed a check with him on February 7, 1969, Hanley replied, "No, I don’t think so”. When the question was repeated, he again gave the same answer.
At this point, the prosecutor sought and received, over objection, permission to treat Hanley as a hostile witness and to impeach him with his prior Grand Jury testimony pursuant to CPL 60.35.[2] Thereafter, although Hanley admitted recalling some of his Grand Jury testimony, he adamantly stated that he could not remember any of the following pertinent, probative Grand Jury testimony, viz.:
"Q. Mr. Hanley, do you recall being asked this question and giving the following answer, 'Question: Did you cash that check for Frank Fitzpatrick in Costello’s Bar and Grill? Answer: I probably did’. Do you recall being asked that question and giving that answer, sir?
"A. No, I don’t.”
* * *
"Q. Mr. Hanely, do you recall being asked this question and giving the following answer: 'Question: On this occasion you gave Fitzpatrick the cash, am I correct? Answer: Yes’. Do you recall being asked that question and giving that answer?
"A. I don’t recall that.
"Q. You don’t recall that one. Do you recall being asked this question and giving the foiling [sic] answer, 1He put the two *57 hundred dollars in his pocket? Answer: Yes’. Do you recall being asked that question and giving that answer?
"A. No, I don’t recall that neither.” (Italics added.)
Defendant, referring to the Practice Commentary (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 60.35, pp 252-254), argues that the statutory terminology "tends to disprove the position of [the party who called him]” is equivalent to the terminology found in an earlier draft of the statute that used the wording "intrinsically unfavorable” testimony (Proposed New York Criminal Procedure Law, prepared by the Temporary Commission on Revision of the Penal Law and Criminal Code, pp 68-69 [1967]),[3] and that, as such, the statute precludes impeachment of a witness who testifies that he cannot remember. We cannot agree with this contention nor with the embellishment added by the majority that CPL 60.35 permits impeachment of one’s own witness "only when the testimony of the witness in court affirmatively damages the case of the party calling him” (p 51).
The "intrinsically unfavorable” language appeared only in the first study draft of the CPL (see Proposed New York Criminal Procedure Law, op. cit., pp 68-69). Subsequent drafts deleted that language and replaced it with the present "tends to disprove” terminology (Proposed New York Criminal Procedure Law, 1968 Study Bill and Commission Report, § 30.50, pp 26-27; Proposed New York Criminal Procedure Law, 1969 Bill, Temporary Commission on Revision of the Penal Law and Criminal Code, § 60.35, pp 47-48). The evident difference in meaning between "tends to” ("to have a leaning; * * * to have a tendency, conscious or unconscious, to any end, object or purpose”, Black’s Law Dictionary [4th ed], p 1637) and "intrinsic” ("essential or inherent and not merely apparent, relative or accidental”, Webster’s Third New International Dictionary, p 1186; 2 Bovier’s Law Dictionary [3d rev], p 1680) makes manifest the legislative intendment to broaden the perspective of the statute and permit greater latitude in the impeachment *58 of one’s own witness. It is quite plain, therefore, that the statute was designed to permit the impeachment of a recalcitrant witness, such, certainly, as was the case here.
There can be no doubt that Hanley’s trial testimony tended to disprove the position of the prosecution and, thus, that he was properly subjected to impeachment by his inconsistent Grand Jury testimony. The nub of the case against defendant was the charge that he had lied before the Grand Jury regarding his cashing a check at Costello’s Bar on February 7, 1969; and Hanley was the only participant in the transaction besides, of course, defendant. Hence, Hanley’s claimed inability to recall the incident at trial cast doubt upon the ability of the prosecution to prove defendant guilty and, therefore, "tended to disprove” the prosecution case.
Moreover, if the prosecution had not been permitted to impeach Hanley, the jury might have believed that Hanley had never remembered cashing the check, and they could well have questioned why he was called at all. Thus, the jury might have concluded, as the majority apparently recognize (p 52), and as defendant attempted to establish at trial, that the prosecutor was trying to exert improper and undue influence upon a witness if, in fact, he knew the witness had no recollection of the incident. Relative to such a situation, and applicable here, we have expressly stated that prior testimony is admissible "for the purpose of showing the circumstances which induced the party to call him” (People v Freeman, 9 NY2d 600, 604, quoting Bullard v Pearsall, 53 NY 230, 231 [Rapadlo, J.]).
In sum, Hanley’s testimony created a clear self-contradiction on a material issue and fulfilled the statutory requisites necessary for impeachment of one’s own witness. As the renowned expert and scholar of evidence, Professor Wigmore, put it, a witness "is clearly false in one or the other of his statements, [where] one of them in effect asserts that he knows about the affair and the other asserts he does not” (3A Wigmore, Evidence [3d ed], § 904, subd [8], p 676); thus, he opined that "where the witness now claims to be unable to recollect a matter, a former affirmation of it should be admitted as a contradiction” (§ 1043). We are in entire agreement with this salutary, logical and legally sound rule.
Accordingly, the order of the Appellate Division should be affirmed.
*59 Judges Jones, Wachtler and Cooke concur with Judge Fuchsberg; Judge Gabrielli dissents and votes to affirm in a separate opinion in which Chief Judge Breitel and Judge Jasen concur.
Order reversed, etc.

. Penal Law (§ 210.50) provides that in a perjury prosecution, "falsity of a statement may not be established by the uncorroborated testimony of a single witness”.

. The jury was instructed as to the limited impeachment purpose for which introduction of the witness’ prior Grand Jury testimony was permitted (see CPL 60.35, subd 2).

. The 1967 draft, in pertinent part, read:
"§ 30.50 Rules of evidence; impeachment of own witness by proof of prior contradictory statement.
“1. When, upon examination by the party who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which is intrinsically unfavorable to such party, such party may introduce evidence that such witness has previously made either a written statement signed by him or an oral statement under oath contradictory to such testimony” (emphasis added).